U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed June 24, 2011**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>VITRO, S.A.B. de C.V.,<br><br>        Debtor in a Foreign Proceeding. | Case No. 11-33335-HDH-15 |
| VITRO, S.A.B. de C.V.,<br><br>     Plaintiff,<br><br>v.<br><br>ACP MASTER, LTD.; AD HOC GROUP OF VITRO NOTEHOLDERS; AURELIUS CAPITAL MASTER, LTD.; AURELIUS CONVERGENCE MASTER, LTD.; ELLIOTT INTERNATIONAL, L.P.; THE LIVERPOOL LIMITED PARTNERSHIP; and DOES 1-1000,<br><br>     Defendants. | Adversary No. 11-03342 |

## MEMORANDUM OPINION ON MOTION FOR PRELIMINARY INJUNCTION

On April 26, 2011, Alejandro Francisco Sánchez-Mujica, as the Foreign Representative of the above-captioned Debtor,[1] Vitro, S.A.B. de C.V. ("Vitro SAB") in: (a) the Voluntary Mexican Proceeding commenced on December 13, 2010 under the Mexican Business Reorganization Act and currently pending before the District Court of Nuevo León; and (b) this Chapter 15 Case, filed his motion (the "Motion"), pursuant to sections 105(a), 1507(b), 1519(a) and 1521(a)(6) of the Bankruptcy Code and Federal Rule of Civil Procedure 65, made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7065, for a temporary restraining order and preliminary injunction, based on his complaint for injunctive relief in this adversary proceeding.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This proceeding is core, pursuant to 28 U.S.C. § 157(b)(2)(P).

## I.      Background Facts

Vitro SAB is a corporation with variable capital (*sociedad anónima bursátil de capital variable*) organized under the laws of Mexico and originally incorporated in 1909. Vitro SAB is a holding company that conducts substantially all of its multinational operations through subsidiaries (collectively, "Vitro"). Vitro is the largest manufacturer of glass containers and flat glass in Mexico, with consolidated net sales in 2010 of Ps. 23,360 million ($1,849 million). Vitro has manufacturing facilities in 11 countries and

---

[1] An ad hoc group of Vitro noteholders (the "Ad Hoc Noteholder Group") has challenged the authority of Alejandro Francisco Sánchez-Mujica to file the Chapter 15 proceeding. That issue will be decided at the recognition hearing, currently set for June 28, 2011. For purposes of this ruling, this court assumes that the Chapter 15 filing was proper.

distribution centers throughout the Americas and Europe, maintains a workforce of approximately 17,000 worldwide, about 85% of whom are located in Mexico, and exports its products to more than 50 countries.

*The Senior Notes*

On October 22, 2003 and on February 1, 2007, respectively, Vitro SAB issued the following notes (collectively, the "Senior Notes" or "Old Notes") (i) $225 million aggregate principal amount of 11.75% Senior Notes due 2013 (the "2013 Notes"), and (ii) $1.0 billion of Senior Notes, comprised of $300 million aggregate principal amount of 8.625% Senior Notes due 2012 (the "2012 Notes"), and $700 million aggregate principal amount of 9.125% Senior Notes due 2017 (the "2017 Notes"), under separate indentures (as each has been supplemented from time to time, (collectively, the "Indentures"). The Senior Notes are general unsecured obligations of Vitro SAB, guaranteed, on an unsecured basis, by substantially all of Vitro SAB's wholly-owned direct and indirect subsidiaries.

Due to the global financial crisis in 2008 and the corresponding downturn in business worldwide, as well as volatility in the financial and commodity markets that adversely impacted Vitro's hedged interest, currency and commodity positions, Vitro SAB did not have enough cash to meet all of its obligations and stopped making scheduled interest payments on the Senior Notes, and other indebtedness to sustain current operations.   This also resulted in derivatives-related litigation (the "DFI Litigation") filed in the Supreme Court of the State of New York demanding payment of approximately $240.3 million plus interest for Vitro's failure to meet its margin call obligations.

As of December 31, 2010, Vitro's aggregate outstanding third-party consolidated indebtedness was approximately $1.710 billion, $1.216 billion of which represents the outstanding principal amount owed on these Senior Notes. In addition, as of December 31, 2010, Vitro SAB's aggregate outstanding indebtedness to its direct and indirect subsidiaries (the "Intercompany Claims") was approximately $2.022 billion.

The nature of, and motivation behind, these Intercompany Claims is of great dispute between the parties. In December 2009 Vitro SAB and Fintech Investments, Ltd. (together, with its subsidiaries, "Fintech") entered into several simultaneous transactions which caused Fintech to invest $75 million, and generated $1.5 billion in intercompany debt, payable to Vitro SAB's subsidiaries by Vitro SAB. It is alleged that these transactions amount to fraudulent transfers on the part of Vitro SAB, and are an attempt by Vitro SAB's equity holders to control any attempts at reorganization.

*Restructuring Efforts*

In February 2009, Vitro SAB announced its intention to globally restructure all of its outstanding debt, and began negotiations with its creditors. Following this announcement, several noteholders formed an ad hoc group of Vitro noteholders (the "Ad Hoc Noteholder Group") and began negotiations, but they were not able to work out an agreement with Vitro. In January 2010, members of this Ad Hoc Noteholder Group claiming to hold at least 25% of the outstanding principal amount of the Senior Notes accelerated the 2012 Notes and the 2017 Notes, and the indenture trustee for the 2013 Notes sent an acceleration notice with respect to the 2013 Notes.

In addition, in April 2010, Vitro SAB and certain of its Mexican subsidiaries were found liable by the Supreme Court of New York in the DFI Litigation. Fintech acquired

the claims of the counter-parties to the derivative transactions with Vitro, and settled these claims in exchange for promissory notes. These developments, among other things, led Vitro SAB to explore alternative means to implement a restructuring, such as an in-court restructuring in Mexico.

On November 1, 2010, Vitro SAB began soliciting a pre-packaged plan of reorganization in Mexico, effectuated through a tender offer and an exchange offer, and on December 13, 2010, filed a voluntary judicial reorganization proceeding (the "Voluntary Mexican Proceeding") under the *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act") in the Federal District Court for Civil and Labor Matters for the State of Nuevo León, the United States of Mexico (the "District Court of Nuevo León"), seeking approval of a pre-packaged, "*concurso*" restructuring plan.

Prior to the *concurso* filing in Mexico, on November 17, 2010 (the "Petition Date"), Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson Kempner Distressed Opportunities Fund, LP, and Lord Abbett Bond-Debenture Fund, Inc. (collectively, the "Petitioning Creditors"), filed an involuntary petition against fifteen of the U.S. subsidiaries of Vitro SAB under chapter 11 of the Bankruptcy Code (collectively, the "Involuntary Petitions") in the United States Bankruptcy Court for the Northern District of Texas. These involuntary petitions were originally contested by the alleged debtors in each case; however, on April 6, 2011, Vitro America, Super Sky International, Super Sky Products, and VVP Finance moved for entry of orders for relief, and the Court entered such orders on that same date. The remaining involuntary petitions were dismissed, but those dismissal orders are currently the subject of motions for new

trial that have not yet been heard by the Court.  Subsequently, VVP Holdings and VVP Funding filed voluntary petitions, that have been jointly administered with Vitro America, Super Sky International, Super Sky Products, and VVP Finance under case number 11-32600, (collectively, the "U.S. Debtors").

On December 2 and 9, 2010, respectively, Aurelius Capital Management, LP. ("Aurelius") and Elliott Management Corp. ("Elliott"), two entities that manage or control funds that hold Vitro SAB's Senior Notes, commenced substantially identical law suits in the Supreme Court of the State of New York against Vitro SAB and 49 of its subsidiaries in their capacities as guarantors of Vitro SAB's bond note debt for breach of contract and payment of accelerated principal and accrued interest (the "NYS Actions"). In each case, the respective plaintiff obtained an *ex parte* order of attachment with respect to all property of any Defendant located in the State of New York.  These attachments continue to be the subject of litigation before the courts in New York.

On January 7, 2011, the request for a *concurso mercantil*, which is a bankruptcy in Mexico filed for a business debtor, was denied in the Voluntary Mexican Proceeding, because the Mexican court found that intercompany claims should not be considered and, therefore, the voluntary *concurso* petition and *concurso* plan did not meet the requirements for a prepackaged proceeding under the Mexican Business Reorganization Act.  This decision was appealed, and on April 8, 2011, a Mexican appellate court reversed this decision and issued a declaration of *concurso mercantil*.

*The Chapter 15 Petition*

Vitro originally filed a Chapter 15 petition in the United States Bankruptcy Court for the Southern District of New York on December 14, 2010, for recognition of its

Voluntary Mexican Proceeding, which was withdrawn prior to any decision being made by agreement of the parties after the denial of the *concurso* by the Mexican bankruptcy court. The Chapter 15 case was re-filed by Vitro SAB, after the decision of the Mexican appellate court. By filing its Chapter 15 Case, Vitro SAB has applied for recognition of the Voluntary Mexican Proceeding as a "foreign main proceeding" under sections 1515 and 1517 of the Bankruptcy Code. The recognition hearing is currently set for June 28, 2011, before this Court.

Vitro SAB filed both of its Chapter 15 petitions in the Bankruptcy Court for the Southern District of New York, and each time the Petitioning Creditors filed motions in the jointly administered cased before this Court, jointly administered under case number 11-36200, to transfer venue to this Court, based on the prior filed related cased, pursuant to Federal Rule of Bankruptcy Procedure 1014(b). After hearing the motion to transfer venue, on May 16, 2011, this Court entered an order granting the motion to transfer, which resulted in both the main case and associated adversary proceeding being transferred to this Court.

Prior to the Court's determination of the Petitioning Creditors' motion to transfer, while the Chapter 15 case was still pending in the United States Bankruptcy Court for the Southern District of New York, on April 26, 2011, Judge Houser, at the direction of this Court, signed an order modifying the stay to permit Vitro SAB to seek from the New York Bankruptcy Court:

> relief under sections 105(a) and 1519 of the Bankruptcy Code and Bankruptcy Rule 7065 restraining, enjoining or staying the commencement or continuation of any and all litigation or actions to collect (including, without limitation, pursuant to the Attachment Orders) with respect to the Restructured Debt (including the Old Notes) against itself or any of its subsidiaries to the extent such subsidiary is not

> otherwise entitled to protection pursuant to section 362 of the Bankruptcy
> Code. For the avoidance of doubt, the relief Vitro SAB is permitted
> hereunder to seek from the [New York Bankruptcy] Court includes,
> without limitation, a stay of the proceedings currently pending before the
> New York State Court in the NYS Actions, but shall not include removal
> of the NYS Actions to the [New York Bankruptcy] Court.

*See* Lift Stay Order, Dkt. No. 410, 11-32600.

Alejandro Francisco Sánchez-Mujica then filed his Verified Complaint for Temporary Restraining Order and Injunctive Relief requesting a temporary restraining order pursuant to sections 105(a) and 1519 of the Bankruptcy Code restraining and enjoining all the holders of the debt that it intends to restructure or discharge in the Voluntary Mexican Proceeding from commencing or continuing any and all litigation or actions to collect against Vitro SAB and its subsidiaries (the "Protected Parties"), other than the subsidiaries currently protected by the stay imposed under 11 U.S.C. § 362 by virtue of their pending bankruptcies filed in the United States.

In the complaint, Vitro SAB additionally requests that, notwithstanding the Attachment Orders, all garnishees be ordered to remit all payments to the applicable Protected Parties in accordance with the ordinary practices that existed between each such garnishee and the applicable Protected Party prior to their being served with the an attachment order. Vitro SAB further requests in its complaint that Preliminary Injunction pursuant to sections 105(a) and 1519 of the Bankruptcy Code, substantially on the same terms as the temporary restraining order, to remain in effect until a decision is rendered with respect to recognition of the Voluntary Mexican Proceeding as the "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code.

Finally, Vitro SAB requests that, if and when the Court recognizes the Voluntary Mexican Proceeding as the "foreign main proceeding," the Court enter an order pursuant

to sections 105(a), 1507(b) and 1521(a)(6) of the Bankruptcy Code extending the Preliminary Injunction as it relates to the Protected Parties through the conclusion of the Voluntary Mexican Proceeding. Alternatively, Vitro SAB requests that the Court extend the automatic stay to any Actions by the Creditors against the Protected Parties that are not then otherwise so protected for the duration of its Chapter 15 Case.

The United States Bankruptcy Court for the Southern District of New York issued a temporary restraining order that was extended by the agreement of the parties until after this Court's determination of the Petitioning Creditors' motion to transfer venue and then for discovery, briefing and hearing on the motion for preliminary injunction, which was heard on June 13-15, 2011.

## II.     Issues

There are two main issues presented by Vitro SAB's motion for injunctive relief: (1) does the Court have the authority under Chapter 15 of the Bankruptcy Code to issue a preliminary injunction to protect Vitro SAB and its non-debtor guarantor subsidiaries; and (2) has Vitro SAB and its non-debtor subsidiaries met the requirements for a preliminary injunction to issue.

## III.    Analysis

### *Protections Available Under Chapter 15 Pre-recognition Injunctions*

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") Congress enacted Chapter 15 of the Bankruptcy Code, "so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a).

"In order for a foreign proceeding to gain recognition within the framework of Chapter 15, the following prerequisites must be met:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a)." *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 285 (Bankr. D. Nev. 2009). Section 1515 imposes several pleading requirements on a Chapter 15 petition for recognition:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
> (b) A petition for recognition shall be accompanied by—
>> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
> (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.
> (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515. The requirements are in place because "[t]he consequences of an order recognizing a foreign main proceeding are substantial. Most dramatically, the U.S. automatic stay, in all its details, applies immediately with respect to the debtor and property of the debtor that is located within the territorial jurisdiction of the United

States." *In re Artimm, S.r.L.*, 335 B.R. 149, 159 (Bankr. C.D. Cal. 2005), *see also* 11 U.S.C. § 1520.

Section 1520 provides a non-exhaustive list of the effect of recognition of a foreign main proceeding, including: "(1) an automatic stay of actions against the debtor under Bankruptcy Code Section 362; (2) the ability to operate the debtor's business; (3) examination of witnesses; and (4) the entrusting of the administration of the debtor's United States assets to the foreign representative." *In re Ran*, 607 F.3d at 1021; 11 U.S.C. § 1520(a)(1)-(3).

*Relief Available During the Gap Period*

Section 1519 of the Bankruptcy Code sets forth the provisional relief that a court may grant during the "gap period," which is the period between the filing of a chapter 15 petition and a court's determination of whether to grant recognition to the relevant foreign proceeding. *See In re Pro–Fit Holdings Ltd.*, 391 B.R. 850, 858 (Bankr. C.D. Cal. 2008). Section 1519 provides, in pertinent part:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or interests of the creditors, grant relief of a provisional nature, including
> (1) staying execution against the debtor's assets;
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
> (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a)(1)-(3). Looking to section 1521(a)(7), it provides that:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or interests of the creditors, the court may, at the

request of the foreign representative, grant any appropriate relief, including

\* \* \*

(7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a)(7).  If recognition is granted under Chapter 15, courts also have the ability to "provide additional assistance to a foreign representative under [Title 11] or under other laws of the United States."  11 U.S.C. § 1507(a).

Relief granted under section 1520 is automatic, where relief under section 1521 will only be granted if "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  Additionally, any provisional relief granted under section 1519 prior to recognition is automatically extended upon entry of the order of recognition of the foreign proceeding.

One of the objections to the Motion before the Court asserts that the Court lacks the statutory authority to stay, prior to recognition of the Voluntary Mexican Proceeding, the continuation of the NYS Actions against Vitro SAB and its non-debtor subsidiary guarantors, who are also defendants in those actions, because section 1521(a)(1) is not among those sections explicitly incorporated into section 1519(a)(3), and this power is not otherwise specifically enumerated in section 1519.  However, as stated previously, the relief enumerated in section 1519 is not all-inclusive.  *See* 11 U.S.C. § 1519(a) ("including"); *see also In re Ran*, 607 F.3d at 1021 (1519(a)(1)-(3) represents a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15"); *In re Pro-Fit Int'l Ltd.*, 391 B.R. 850, 866 (Bankr. C.D. Cal. 2008).  Further, section 1521(a)(7) states that the relief that may be granted includes "granting any additional relief that may be available to a trustee, except for relief available under

sections 522,554, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7); *see also In re Condor Ins. Ltd.*, 601 F.3d 319, 324−25 (5th Cir. 2010) (section 1521(a)(7) provides for "any relief" and "includes no other language suggesting that other relief might be excepted").

The plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989). Thus, protections afforded under §§ 362 and 105 are available to Vitro SAB prior to recognition of the foreign main proceeding.

The Court finds that it is empowered under sections 1519(a), 362 and 105 of the Bankruptcy Code to issue the Preliminary Injunction in favor of Vitro SAB to protect its assets, until such time as a determination on recognition is made. Vitro SAB has brought forth evidence illustrating that, upon approval of this injunction, a successful reorganization would be probable. The Mexican Appellate court found that the voluntary *concurso* petition and plan satisfied the requirements under the Mexican Reorganization Act, and the Court has a recognition hearing that is scheduled to occur within the next week, limiting the duration of the stay under 1519(a) should the recognition proceeding fail.

### Protection available to the Non-Debtor Subsidiaries

Having concluded that the Court has the power to enjoin actions against Vitro SAB and its assets, the Court must determine if these protections can be extended to Vitro SAB's non-debtor subsidiaries. Vitro SAB argues that this injunction may be extended to its non-debtor subsidiaries by virtue of Section 1519, and that such a third-

party injunction is both within the power of the Court and necessary to protect the interests of creditors. Vitro SAB relies on the language in section 1519 which provides that the Court may grant relief where it is "urgently needed to protect the assets of the debtor or *the interests of creditors.*" 11 U.S.C. § 1519(a) (emphasis added). Further, the Court would have "related to" jurisdiction under the Bankruptcy Code to protect the subsidiary non-debtor guarantors on the basis of their upstream payments to Vitro SAB that it must rely on to complete its reorganization in Mexico. *See In re Seatco, Inc.,* 257 B.R. 469, 476 (Bankr. N.D. Tex. 2001).

*The Preliminary Injunction*

Having determined that the Court has the authority to enjoin the NYS Actions and other collection efforts against Vitro SAB's non-debtor guarantors, the Court must now determine if they meet the requirements for a preliminary injunction under these facts.

Courts in this district have enjoined litigation against non-debtors in limited circumstances, including (1) when the non-debtor and debtor enjoy such an identity of interest that the suit against the non-debtor is essentially a suit against the debtor, and (2) when the third party action will have an adverse impact on the debtor's ability to accomplish reorganization. *In re Bernhard Steiner Pianos USA, Inc.,* 292 B.R. 109, 116 (Bankr. N.D. Tex. 2002) (citing *In re Zale Corp.,* 62 F.3d 746, 761 (5th Cir. 1995)). The circumstances in both instances involved creditors receiving one hundred cents on the dollar through a plan, and if the debtor failed to provide payments, then the injunction would dissolve.

Injunctions issued under § 105 outside of a plan of reorganization may be granted only "under the usual rules for the issuance of an injunction." *In re Commonwealth Oil*

*Refining Co.*, 805 F.2d 1175, 1188 (5th Cir. 1986). For the Court to grant a preliminary injunction, the movant must show: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (U.S. 2008); *see also In re Commonwealth Oil Refining Co.*, 805 F.2d at 1189 (requiring the movant to show a "substantial likelihood" of success on the merits and a "substantial threat" of irreparable injury if the injunction is not granted, as to the first and second factors, respectively).

Vitro contends that the likelihood of success on the merits should be defined as the likelihood of completing a successful reorganization in Mexico. The Ad Hoc Noteholder Group, however, argues that this definition of "merits" is erroneous and ill-founded. According to *Commonwealth Oil Refining Co.*, the "merits," with regard to the four-pronged preliminary injunction test, refer not to the successful completion of reorganization, but to the non-bankruptcy action itself. *Commonwealth Oil Refining Co.* specifically states that, "the inquiry for a preliminary injunction necessarily focuses on the outcome… of the questions giving rise to the litigation." *Id.*, 805 F.2d 1175, 1189 (5th Cir. 1986). In this instance, the questions giving rise to the litigation are the desired collection efforts the Ad Hoc Noteholder Group seeks to implement against the guarantors of the notes, i.e. actions at law by the noteholders against the guarantors. The evidence is divided on this issue.

The second factor to consider is irreparable injury. Vitro contends that irreparable injury will result if the injunction is not granted. It argues that Vitro S.A.B is merely a

holding company, and that the company's cash flow is derived solely from its subsidiaries. If the creditors are not prevented from collection efforts against the subsidiaries, then the direct result will be harm to Vitro S.A.B. and the reorganization process will be thwarted.

A key aspect in illustrating irreparable harm is demonstrating that the movant has no other adequate remedy at law. *Janvey v. Alguire*, 628 F.3d 164, 179 (5th Cir. 2010) ("a harm is irreparable where there is no adequate remedy at law, such as monetary damages"). Here, the non-debtor subsidiaries do indeed have an adequate remedy at law. If so desired, the non-debtor subsidiary guarantors could file insolvency proceedings in either Mexico or the United States. Vitro has provided no explanation, other than the reluctance of creditors to deal with an entity in bankruptcy, as to why the non-debtor subsidiary guarantors cannot or should not initiate their own insolvency proceedings. For this reason, the second factor favors the Ad Hoc Noteholder Group.

Also, Vitro SAB will not suffer irreparable injury, i.e., it will still have an opportunity at a successful reorganization, if the noteholders are permitted to pursue their respective guaranty claims against the non-debtor subsidiary guarantors.

Without a showing of irreparable injury to Vitro SAB and its non-debtor subsidiaries it is hard to find that the harm placed on Vitro outweighs the harm placed on the noteholders, the third factor to be considered. Currently, the holders of the Senior Notes are owed approximately $1.2 billion in accelerated principal combined with approximately $300 million of past due interest. Vitro S.A.B. argues that the only potential harm to the noteholders is that they will not be paid as quickly as they wish. However, if this injunction is granted, the noteholders will be required to delay collection

efforts while reorganization proceedings are pending in Mexico. This will result in the noteholders being substantially harmed by the lost interest and the possible cram down of their notes as a result of Vitro SAB's reorganization proceedings.

Furthermore, the noteholders will have to adjudicate their claims and appeals in the Mexican legal system even though the notes were issued under indentures governed by New York law, underwritten by U.S. banks, and registered with the SEC. This illustrates the intent to have access to the U.S. courts. The harm to the noteholders far outweighs the harm to the Debtor; this factor favors the Ad Hoc Noteholder Group.

Finally, the granting of an injunction will disserve the public interest. Extending the automatic stay or issuing an injunction for non-debtors contravenes a basic and compelling principle of federal bankruptcy law. Like the rest of the Code, Chapter 15 focuses on protecting the debtors, not the non-debtor subsidiaries. If granted, precedent will be set that any foreign debtor can initiate insolvency proceedings solely for a parent holding company in a foreign jurisdiction, get an injunction protecting non-debtor subsidiaries in the United States, and confirm a plan through insider votes leaving creditors in the United States with little recourse. Additionally, in chapter 15 cases courts strive to uphold comity. Comity is not furthered by granting an injunction when such an injunction may not, according to expert testimony at the hearing, be recognized under Mexican law. The public interest will be disserved by granting this injunction; this factor favors the Ad Hoc Noteholder Group.

Limited Injunctions for third parties have been granted in the past in order to effectuate the debtor's ability to reorganize. This Court has granted an injunction in order to allow a successful reorganization process after the movant met all four factors at

a confirmation hearing. *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 118 (Bankr. N.D. Tex. 2002). In *Bernhard Steiner*, the creditors entered into loan agreements with the debtor company, secured by personal guarantees of the business owner. *Id.* at 112. In regards to the circumstances of granting the temporary injunction, first, the debtor's representative in *Bernhard Steiner* testified that being forced to defend against lawsuits on behalf of his company would drain his personal time and resources, which would be better used to conduct day-to-day operations of the business. *Id.* at 117. Second, the Court found that subjecting the principal's interest in the company to thirsty creditors while the debtor was attempting to run the reorganized business and pay off creditors would adversely impact other necessary parties to the proceeding and thwart attempts to successfully reorganize. *Id.*

Proceeding to the injunction factors, the Court found all factors were sufficiently met to grant the injunction. *Id.* at 118. The Court found: (1) The creditors would be paid in full, should the injunction be granted and reorganization efforts protected; (2) the debtor faced a substantial threat of irreparable injury and would be prevented from successfully reorganizing if the creditors had been permitted to pursue claims; (3) the creditors would not suffer irreparable harm because they had an adequate remedy and would have been affected, if at all, in only a minimal fashion; (4) finally, the reorganization process was in the public interest and granting the injunction would not disserve that interest. *Id.* Due to the sufficiency of the factors, the Court granted the debtor the temporary injunction. *Id.*

Another bankruptcy judge in this district previously overruled an objection to a permanent injunction that had no effect on the creditor whatsoever. *In re Seatco*, 259

B.R. 279, 283 (Bankr. N.D. Tex. 2001) (Houser, C.J.). The debtor's modified plan provided, *inter alia*, that the plan would not prohibit the creditor from perfecting or enforcing its claims or interests. *See id*. Further, the debtor sought a temporary injunction under its modified plan. *Id*. This provision merely restrained the creditor from collecting from the debtor and provided that, should the plan be confirmed, the creditor would then be free to pursue its claims for any amounts not being paid under the plan. *Id*. Similar to *Bernhard Steiner*, the Court stated that, if the debtor defaulted on payments to the creditor, after notice and an opportunity to cure, the creditor was free to pursue the debtor for all amounts owed to it without further court order. *Id*. The Court found that the only harm to the creditor from plan confirmation would be forcing the creditor to accept less than favorable payments. *Id.* at 284. Thus, the Court held that the temporary injunction was necessary and appropriate. *Id*. This ruling was also made at the time of confirmation of the plan.

The facts before the Court today fit neither one of these models. The proceedings in Mexico are in an early stage. It is unclear that they will be successful, or that creditors, such as the noteholders will be paid in full. In contrast to the third party injunction cases mentioned above, Vitro SAB has asked for an injunction to protect third parties and offers no protections or assurances of payment to creditors. For example, the proposed injunction would not restrict the subsidiaries in their ordinary operations, allow for transparency and reporting to creditors, or provide for restrictions on the transfer of property. The Court would have little control over the actual reorganization proceedings and once the attachment orders in the NYS Actions were lifted, the assets of the subsidiaries could be quickly funneled to Mexico.

Finally, Vitro relies heavily on *In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. 1999). However, this case is not applicable in the eyes of this Court. Both the present case before the Court and *Schimmelpenninck* involve a foreign bankruptcy proceeding, but in *Schimmelpenninck*, the claim against the subsidiary was considered an asset of the parent company, which was sought by the creditor. The parent company in *Schimmelpenninck* was the sole obligor of the notes. *Id.* at 358. Under these facts, the Court found it necessary to grant the injunctive relief, because denial of such remedy would disadvantage other creditors by allowing the claimant creditor to circumvent other creditors and gain preferential status against an asset found to be an asset of the debtor parent. *Id.* at 358, 360. Under the present facts, however, Vitro SAB's subsidiaries are independently liable as guarantors of the notes and their assets are liable for repayment. Unlike *Schimmelpenninck*, granting the injunction here would adversely and unnecessarily prevent the noteholders from pursuing the entities that are liable and would prejudice the creditors from their remedy at law.

Vitro SAB seeks to enjoin the noteholders from pursuing claims against the guarantor subsidiaries, and it asks the Court to allow the Mexican reorganization to run its course. Vitro SAB is a separate holding company. It is this holding company that has filed for bankruptcy relief in Mexico, not the subsidiaries. The subsidiaries, which retain the company's assets, independently contracted with the creditors for the guarantees. Essentially, Vitro SAB is seeking a short-cut to the system; rather than the subsidiaries filing for bankruptcy and independently receiving protection through an automatic stay, the parent company is asking the Court to grant blanket protection for it and its subsidiaries. Granting this, however, would be contrary to the creditors' proper remedy at

law—to file a claim against the subsidiary that is the guarantor of the note. Therefore, the non-debtor and debtor do not share an identity of interest to the extent that the suit against one is essentially a suit against the other. Further, the third party action is unlikely to have an adverse impact on the debtor's ability to reorganize. Thus, enjoining creditors from pursuing claims against non-debtor parties in this scenario is improper.

## IV. Conclusion

In conclusion, the Court finds that it has the authority under 105(a) and 1519(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 65 to issue the requested pre-recognition injunction, and such relief is granted for Vitro SAB. However, Vitro has not met its burden to show that this injunction should be extended to protect entities other than Vitro SAB and its assets, which do not include the non-debtor subsidiary guarantors.

### *Limited Stay of This Ruling*

Because of the importance of this matter to the parties, this Court anticipates that this ruling may be appealed. The issue presented appears to be one of first impression since the enactment of Chapter 15. The case has national importance because of the issue, the amounts involved, and the number of parties affected.

In order to maintain the status quo created by the temporary restraining order issued by the New York bankruptcy court and extended by agreement in this court after the change of venue, this Court will stay temporarily its ruling by extending the agreed injunction until Friday, July 1, 2011 at 5 p.m. Central Daylight Time.

Any further stay or injunction will need to be sought and obtained in any appeal which may be filed.

### ###End of Memorandum Opinion###